24, 1147 Cruz v. Banks. Mr. Bellantoni, I guess you can just wait right there. May I? Whenever you're ready. Yes. Rory Bellantoni for the plaintiffs. May it please the court. To pick up where I left off a minute ago, this is another case where the plaintiff alleged that there needed to be an extended school day. There is in this case another issue, and it is an issue that I find very difficult. So I'm going to ask you and the other side to address that issue directly. This child has two types of disabilities. Everybody agrees that he is highly intensive management needs, and also that he has multiple severe disabilities. New York has two separate regulations, one for each of these. For the first, the child has to be in less than six. For the second, has to be less than 12. In a summary order, we have treated the two things as being all the same thing, and it can be handled together. And that is what the state is arguing. On the other hand, it looks to me as if these are two separate requirements that have separate requirements for it. If this were a case in which one said, if a child has mental disabilities, X is needed. And if a child has physical disabilities, Y is needed. We would certainly not say, oh, well, just because he has one, we can handle it with the other. So my guess is that this is a mistake. On the other hand, we have a summary order saying it's okay. There are cases that are the other, and there's nothing in New York that tells us about it. So my question, and I'm asking this really for both, is shouldn't we certify to New York and tell us whether this is one requirement or whether these are two requirements? And that if a child meets one of them, must be treated in that. So that's, I'm sorry to be going on, but that's all the other things are the same things that were in the other case. This is something different, and I wish it could be addressed by both sides. Your Honor, I think you should. I mean, I'd rather say I think you should rule in my favor, but I think you should certify the question for the New York State Court of Appeals. The problem here is we have an administrative officer in the SRO who, in the prior case, Carrillo, said that this requirement that a student shall not be in a class with more than six students if he has highly intensive management needs is a moniker. It's not a thing, he said. The parents blow that out of proportion. My question is, have we ever certified where the issue is not technically a legal, an issue of law, but is a regulation? And where you have two regulations, and we have to ask the New York Court of Appeals to tell us whether these are two or one regulation, and I just haven't found a case where we have certified that. That doesn't mean we can't do it, but it would be something new. I see it as an issue of law more than just a regulation. If the New York State Legislature decided to give its citizens the benefit of a smaller class size with highly intensive management needs, like the statute of limitations for an appeal. Under the IDEA, it's 90 days. New York makes it four months. We appealed to this court four months. We don't have our appeals rejected if they come in in 35 days because the IDEA says 90 days. And I believe what the New York State Legislature said was if the management needs are highly intensive. And Your Honor, there's also a difference between this case and Carrillo. In this case, the student's disability is traumatic brain injury. There it was multiple disabilities, and even though you're not supposed to use the disability to figure out the level of services, even though we can say the student here has many different, and I would say not injuries, but sequelae of a single injury. The student had a traumatic brain injury, and all these things the student presents with are all manifestations of a single injury. So there was no testimony in this record, there are multiple injuries. But Your Honor, I believe you're correct. I think the New York State Court should decide what the legislature meant. They may decide not to take it. True. In which case, we'll have to decide whether this is one or two regulations and so on. But they may take it and tell us what it's about, if we decide to certify it. And forgive me, Your Honor, I just, maybe I'm myopic. As I get older, I can't see how these two statutes can exist together. Even if a student has multiple disabilities, if those needs are intensive, you're okay. But once they're highly intensive, that 12 student program would be inappropriate. Well, that may be what these two regulations are doing, or it may not be. But that's what, since, if I had to decide, I'd have to decide whether these two are that way. But it may be that New York really is treating those as two of the same thing. But I don't know. And here, there was a decision to go from a 6 to 1 to 1 class to a 12 to 1 to 4 class, based on the student needing more time with the teacher. You don't get that if you go to a larger class size. So in this case, it's- Well, it depends. I mean, class size is one thing and ratio is another thing, right? And so I thought the theory of moving from 6 to 1 to 1 to 12 to 1 to 4, seeing that as providing more assistance is because the ratio is smaller now. Not really, because in a 6 to 1 class is 6 students to 1 teacher, and a 12 to 1, 12 students to 1 teacher, and 4 paraprofessionals. But this student has his own 1 to 1 paraprofessional. You see, if the issue were, without any such regulation, whether a move from 6, 1, 1 to 12 was more beneficial for the student, that is exactly the kind of thing that I would defer to the people who are the educational people. That is what I'd defer to, as I would on the other. But if New York says, if you have X, you need 6, and if you have Y, you need 12, and somebody has both X and Y, that's a different issue. That's not one that I can, you know. And that's why I want to find out what New York really means about this. Well, if it's a question of New York law on which the SRO and IHO have opined, do we not defer to their interpretation of New York law? Well, they haven't deferred to New York law. What they've said was that they read the statute that you can allow either outcome. But going back to the issue, student has highly intensive management needs. The class size shall not exceed 6. It doesn't say anything about how many teachers, Your Honor, can be in that class. You can put 40. You can increase the size of the team. My favorite argument is that it's clear, and they both apply, and the least common denominator is 6, and you also need to have four paraprofessionals. Is that- In the 12 to 1 to 4 class, yes, but the student has his own one-to-one para. So as the IHO found- You say 6 to 1 to 2 is how you would satisfy both, right? Say again, Judge? 6 to 1 to 2 is how you would satisfy both provisions. It would technically still be a 6 to 1 to 1 class with his own para. Everywhere he goes, he has his own para. So that's not an issue. What the IHO found in this case is correct, that if you have 12 students, and the DOE witness said there can be 11 adults in that class given the paras each student had, 12 students, 11 adults, and now back to the non-extended school day, you have to push in all the students' services if just half of the other six get related services. It's another six. You're talking about 17 to 18 adults in a class with 12 students, and that's what the IHO found was chaotic and would create bedding. And the SRO basically starts with, I disagree with his analysis. Now, he goes over the testimony of the DOE witness, but what does she say? She says there are four to five periods in a day, but the IEP requires seven periods of special education, and she doesn't say that all services can be done in- Now you're back to the other argument that we already discussed about whether you can fit or not, and frankly, we've already fought enough about that. Your Honor, if I may, the only difference between this case and the other one is the other one was just my argument. Here the IHO found independently, based on the testimony and based on the evidence, that the DOE did not meet its burden of proof. Not me arguing. The IHO found, and I submit there was no reason for the SRO to overturn the IHO's decision because there was a disagreement. Thank you, Judge. Thank you, Counsel. You're reserved a couple minutes for a vote. Good morning, Your Honor. Members, may it please the Court, I'm Alan Rosinas. I represent the Department of Ed and the Chancellor. Let me just briefly address the point about the mathematical impossibility. The SRO had a very thorough decision on that, and it was almost five full pages. It looked in detail at the facts in the case. It explained-I mean, my colleague earlier explained this well, and Your Honor has discussed it too, so I don't want to-I want to get to the regulatory issue, but the SRO gave a very fact-specific analysis on that issue based on the testimony, and it determined that-he determined that- That it could be done. That it could be done, exactly, Your Honor, based on combining periods and so forth. On the regulatory issue, I would contend respectfully that we don't-that this Court does not need to send this to the New York State Court of Appeals for a couple reasons. First, as Your Honor has pointed out, the deference issue. The IHO and the SRO on this issue- We don't defer on questions of law. If it's a question of law, we know more than the others. So it's not-if it's a question of law, deference isn't there. And what I want to ask you is if these two regulations were-if one has a mental handicap, the child should be in a group of six. And if child-if somebody has a physical handicap, it must be in an issue of 12, class of 12. If those were the regulations, it would be perfectly obvious that they're separate regulations, and that depending on what the child has, you do the thing which gives the most. I don't think there'd be any doubt in that. So the question is, when the regulations are multiple severe and so on, or needing particular thing, where the roles are two which are essentially the same, in which case judgment can be made and we would defer, or whether New York means these to be two different things. And that's what my problem is. Yes, sir. Let me just back up for a moment, and I'll get to your question and say I think that here the regulation is ambiguous, arguably ambiguous, and I do think that there's some room for deference to the agency in that context. So I agree that on questions of pure law, the court doesn't defer. New York has a Chevron-like deference interpretive rule. Yes. I know Chevron has been overturned, but I think that even if you look at Skidmore, there's some practical deference to the agency. But I think when you go back to- I'm saying under New York law, I know Chevron's gone, but as far as New York interpretation, New York officials interpreting its own law when it's ambiguous, is there not a canon or interpretive rule that defers to their interpretation of their own rights? You know, I actually- that didn't come up in the briefing. I don't want to speculate, but I'm not positive, Your Honor. So I'm working off of the assumption here that there is some deference owed when there is some ambiguity in the regulation to the agency in charge of implementing the regulation. If that's wrong, I apologize. That was my assumption. But let me say one more thing specific to this case about the facts that is relevant here to whether it should be submitted to the New York State Court of Appeals. What the SRO said here precisely was that the child exhibits some highly intensive needs, but those needs arise out of the multiple severe- excuse me, I always get this phrase wrong- the severe multiple disabilities. They arise out of that. So I think what the SRO is basically saying is, look, he has what appear to be highly intensive- Well, let's go back to my example. Yes, Your Honor. Suppose we had the mental and the physical, okay? And New York says for mental, you need a psychiatrist in the thing, and for the physical, you don't. Would it help at all if they said the mental derived out of the physical, which is what you're just saying, and then because of that say you don't need to do what they've required for mental? I mean, you know, I'm giving you things where the regulations are clearer, but I've got to say that I read the two as two very different things. That is, I don't even see in myself the kind of ambiguity for which I give Jeffrey reference. I mean, it's one thing to say somebody has multiple physical needs, and another to say that the person needs- the two requirements are very different, in fact, at least. But I'm willing to say that my own judgment on it may not be New York's, which is why I'm saying certified. I've got to tell you, if I were deciding it, I'd say these are two requirements. Yes, Your Honor, I mean, I think to the degree that there's ambiguity here, and maybe this should be certified, I'm not necessarily averse to certifying it if it ultimately is the logical thing to do and then have the case come back to this court after. But I think that the- what you really- well, the ambiguity is what happens when someone fits into both categories. Exactly. And, I mean, now Mr. Bill Antonio is saying he doesn't necessarily think the student has severe multiple disabilities. I don't think that's ever been briefed. I don't think that was raised below. If somebody fits under both categories, is one of these dominant over the other and must rule, or does New York say when somebody fits under both categories, do the best you can? And I think, Your Honor, that the IHR and the SRO basically took the latter position, that there's some- and that's sort of what this court said in Carrillo, which I know is persuasive, not binding as a summary order, as the court has said. I think that that's what they decided, to the degree that there is deference owed to them, and maybe there isn't. Now, let me ask you another question. Yes, Your Honor. Leave aside this particular case. This is an issue that is going to come up again, and maybe you, maybe others would have it. Wouldn't it be good to have this issue settled, to know what happens when you have these different regulations? I mean, just as a matter of future cases and so on, isn't it wise to see, just find out what New York means, rather than have with slightly different regulations and so on, have the thing come up? So that, you know, I know you have this case, but isn't this exactly the kind of situation where getting it settled would be a good thing? Can I ask you a question while you're at it? Yes, of course, Your Honor. Does this come up in New York law, or is this always, is this statutory scheme sort of intended to plug into the IDEA scheme? Well, that's a fair question. I mean, I think certainly it's, I'm not sure it applies in any context other than the IDEA, but it still might be a question of New York law for New York courts to determine as far as how the New York state regulation is interpreted. So I'm not sure, Your Honor. It is a question of New York law, but if, I mean, I think in thinking through what, so you might want an answer to this question, an answer to Judge Calabresi's question. You might want an answer for future cases. But I don't know that that decides whether certification is appropriate or, since it's always, pretty much always federal courts in the context of IDEA cases interpreting state law, whether that's just a question that we should resolve. Yeah, I mean, that's a fair point, Your Honor. I mean, the thing I was going to say to Judge Calabresi also is, Your Honor, I agree that we could have this settled. Of course, the court could adopt what it said in Carrillo in presidential opinion. Go ahead. Sorry. The states can add requirements to the IDEA, and that's what they have done here. I mean, the IDEA statute allows the states to add added requirements, and New York has added these. Now, you know, Connecticut may not, in which we would decide, but we deal with a lot of New York cases, and New York has added these. They might have added totally different things, and IDEA says the states can add. Of course, Your Honor. And, look, I think one way this could play out, and this is what I think is perfectly appropriate in my view, is the court could take the position it took in Carrillo, or at least that, which is basically what the SRO said, that there's a continuum of services here, and it could determine that some deference is indeed owed, assuming that that's right under the law, which I think it may be. And I think that then, if the state says, oh, no, that's not what we meant, the state can go and draft new regulations. So there's a way of this playing out that doesn't require certification. I'm not saying that we're totally opposed to it, but I think that it could work without it. And I do think that, anyway, in this particular case, again, to me, and I hear what you're saying, Your Honor. If, like, you have a mental and a physical disability, and the mental requires something, but it arose from the physical, obviously, in that instance, you would still want the, if you're saying there's some extra person that needs to be on the scene because of the mental disability, I agree. In that case, it's a very clear cut. Can I ask, related, so looking at Sub 3, do you ever have students with severe multiple disabilities whose programs consist primarily of habilitization and treatment that aren't also students whose management needs are determined to be highly intensive? I mean, I don't know, Your Honor, I don't deal with these cases enough to say, but I take your point, and I agree with the spirit of it. It seems like the odds are it's a practical matter. If that's the case that it always is, then as an interpretive matter, rather than just saying it's a continuum, because I'm not sure how far that gets us. It gets us to the same result by saying, well, if it's always the case that where you're in severe mental disabilities, you also have highly intensive management, that you would look to the former controlling, because that's where you have, essentially, it's assumed in the regulation that you would have both. Yeah, I think that's what the SRO is saying is kind of the crux issue here is the severe multiple disabilities. I think the other thing that's worth noting, Your Honor, is the appellants are making it sound like there's just a black and white thing, that there's six to one to one placement. But why would one have both? I mean, multiple severe disabilities might be somebody who has broken legs and is blind or something, and that person might have both and yet not need highly intensive management needs. It might be somebody who has two or three very severe physical, but that can be handled perfectly well in a classroom of 12, because he doesn't have severe management needs. But then there's maybe somebody who has severe management needs, and he may have both, and somebody may have severe management needs because of mental problems, but doesn't have many disabilities. I mean, as I read it, I can see, as in this case, somebody who has both, but I also see situations where one might have one and one have the other, and that's why I'm all so mixed up about this thing. I think part of your answer would include, if you would, fold it in, is that it doesn't just say severe multiple disabilities. It says severe multiple disabilities whose programs consist primarily of habilitation and treatment. That seems relevant to me. That's certainly true, Your Honor. I mean, I think that the final point I'd like to make, because I know my time's already up, is the opponents want to make it sound like this is black and white, like the six-to-one-to-one is more intensive and the 12-to-one-to-four is less. That's not necessarily true at all. It depends on how you look at it. Yes, the student-to-teacher ratio is higher, but the student-to-other-adults-in-the-room ratio is actually lower. You have three-to-one of the extra staff in that final number, the four, as opposed to just six-to-one in the six-to-one-to-one placement, which is why in Carrillo this court actually said that, in so many words, that the 12-to-one-to-four is actually the most intensive placement. It's one of the reasons that the court decided in the department's favor in that case. And that's why, if we get a reading of these that permits that kind of judgment, I'm totally willing to defer to you. And that's why on all the other issues I've cut the other side off and said, no, no, no, I'm willing to defer, I'm willing to defer in these cases. If that is what is going on, happily defer. And I hear you, Your Honor, and I would just respectfully request that, and I apologize, I don't know off the top of my head because it wasn't briefed, but if the court wants to explore or wants to have something under briefing on whether or not any deference is owed in this case under New York law or federal law, depending on what law applies, I think it probably would be New York law, as to whether a Chevron-like situation still exists in New York State or Skidmore or whatever it would be, whatever exists right now. I would ask that the court consider the possibility that deference might be owed to the IHO and the SRO. I can't tell you authoritatively whether or not that's true, but certainly if there is any deference owed. Let me ask you this. I know I'm crazy about certification. But suppose we were to send it to New York and New York said, you know, this is the kind of multiple regulation where we believe deference is owed. That would be a very interesting thing to learn. It's certainly possible the New York State Court of Appeals could say this is a case where if there's ambiguity, you defer to the administrative officers. In that case, I think I would essentially contend that we would win on the return of this court. If there are no further questions, Your Honors, we ask that you affirm if possible. Thank you. Going back to Carrillo for a moment. In that case, neither SRO base or Judge McMahon did a thorough legal analysis on do these laws conflict with one another. I think there was a finding that this program satisfies the FAPE requirements, so we're not going to disturb the finding. But there was not the analysis I think Your Honor is talking about doing now in that case. Here, as far as deference, that was something that was brought up here. I don't know if you want us to submit briefs on whether or not this case should be certified. But to answer your question, Judge, about whether or not we should know, the parents of these students should know. They rely on the law when they make their unilateral placement. So parents don't think that 12 to 1 to 4 class is appropriate because their student has, and by the way, it's not just highly intensive management needs. It's highly intensive management needs requiring a high degree of individualized attention and intervention throughout the school day. So there's your example of other multiple disabilities that wouldn't require the same thing as somebody with highly intensive management needs. But yes, these parents should know whether or not when they, because as Your Honor knows, they bear the financial risk. The Supreme Court says again and again when they make that unilateral placement, but they're also relying on New York law. And a lot of parents don't have attorneys. And they're reading this as if my student has these needs, then a class size shall not exceed six. And then at the end of the road, they're told, well, not really, because 12 is just as good as six. So I think it is important to maybe have this case certified and let the New York Court of Appeals decide what the legislature meant when it enacted these two different statutes or parts of the statute. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisory.